# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARK NOLAN,

Defendant-Appellant.

UNPUBLISHED
October 18, 2016

No. 326970
Chippewa Circuit Court
LC No. 14-001419-FH

Before: MARKEY, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant was convicted by a jury of possession with intent to deliver less than 50 grams of heroin, MCL 333.7401(2)(a)(*iv*), possession of less than 25 grams of methadone, MCL 333.7403(2)(a)(*v*), possession of a controlled substance in jail, MCL 801.263(1), and maintaining a drug house, MCL 333.7405(1)(d), but was acquitted of delivery of less than 50 grams of heroin, MCL 333.7401(2)(a)(*iv*). Defendant appeals as of right. We affirm.

Following a confidential informant's (CI) two controlled purchases of suspected controlled substances from defendant; the police executed a warrant and searched the apartment where defendant was living, seizing a package of heroin. After his arrest, pills that were later determined to contain methadone were found in defendant's sock at the jail.

Defendant filed a pro se supplemental brief pursuant to Supreme Court Administrative Order No. 2004-06, Standard 4, raising almost identical arguments as those in the brief filed on his behalf by his attorney. Where necessary, additional arguments raised by defendant in his pro se brief are addressed separately.

Defendant argues in his principal brief on appeal that there was insufficient evidence to support all of his convictions and that his right to due process was therefore violated. In his Standard 4 brief, defendant challenges the sufficiency of the evidence in relation to his possession of methadone and possession of a controlled substance in jail convictions. We "review[] de novo a challenge on appeal to the sufficiency of the evidence." *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). Taking the evidence in the light most favorable to the prosecutor, we conclude that a rational trier of fact could find defendant guilty beyond a reasonable doubt of all the offenses. *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010). Moreover, because we conclude that the evidence was sufficient, we also conclude that

there was no due process violation. See *People v Hampton*, 407 Mich 354, 368; 285 NW2d 284 (1979).

To support a conviction for possession with intent to deliver less than 50 grams of a controlled substance—here, heroin—the prosecution must prove: "(1) that the recovered substance is [heroin], (2) that the [heroin] is in a mixture weighing less than fifty grams, (3) that [the] defendant was not authorized to possess the substance, and (4) that [the] defendant knowingly possessed the [controlled substance] with the intent to deliver." *People v Wolfe*, 440 Mich 508, 516-517; 489 NW2d 748 (1992). To constructively possess the controlled substance, the person must have the right to exercise control of the [controlled substance] and know that it was present. *Id*. at 520. Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the controlled substance. *Id*. at 521. In other words, constructive possession of narcotics exists when the defendant has the right to exercise control over the narcotics and has knowledge of their presence. *People v Hardiman*, 466 Mich 417, 421 n 4; 646 NW2d 158 (2002).

With regard to the first three elements of possession of heroin, Grayling Crime Laboratory forensic scientist Karen Brooks testified that the bag seized from defendant's apartment contained 8.4 grams of heroin, and there was no evidence that defendant was authorized to possess the substance. Defendant's argument that the fourth element was not proved beyond a reasonable doubt—that he knowingly possessed the heroin with intent to deliver— is without merit. The CI identified defendant as his source for heroin and as the person who sold him the drugs for both controlled purchases, the second purchase occurring in the apartment defendant shared with his mother and her boyfriend. The heroin was found in a duffle bag and in the same bedroom where defendant's driver's license and a bill addressed to defendant were found. Under these facts, it was rational for the jury to find that defendant had the right to exercise control over the narcotics and had knowledge of their presence. *Id*. Chippewa County Sheriff's Department Detective Sergeant Greg Postma testified that in his experience as a police officer, 8.4 grams of heroin was too large a quantity for personal use. Specifically, he testified that the quantity involved could be broken up into 84 tenth-of-a-gram packets and sold as "points," which is sufficient to infer intent to deliver. *People v Abrego*, 72 Mich App 176, 181-182; 249 NW2d 345 (1976). We conclude that it was not irrational for the jury to reject testimony by one witness that the drugs belonged to a man only identified as "Buck," in favor of the evidence offered by police officers. *Wolfe*, 440 Mich at 519. We conclude that the totality of these circumstances allows a rational fact finder to conclude that defendant constructively possessed the heroin beyond a reasonable doubt.

The elements of maintaining a drug house are: "(1) the defendant kept or maintained a building or dwelling; (2) the building or dwelling was kept or maintained for using or selling drugs; (3) the defendant knew the building or dwelling was used for this purpose; and (4) the defendant had some general control over the building or dwelling. *People v Bartlett*, 231 Mich App 139, 153-154; 585 NW2d 341 (1998). A person must have "the ability to exercise control or management over the house." *Id*. 152. The phrase "keep or maintain" "implies usage with some degree of continuity that can be deduced by actual observation or repeated acts or circumstantial evidence[.]" *People v Thompson*, 477 Mich 146, 155; 730 NW2d 708 (2007).

As stated earlier, the CI identified defendant as his source for heroin and identified defendant as the person who sold him the drugs for both controlled purchases, with the second purchase occurring in the apartment where defendant lived. The heroin was found in a duffle bag and in the same bedroom where defendant's driver's license and a bill addressed to defendant were found. It was thus rational for the jury to find that defendant had the right to exercise control over the narcotics and had knowledge of their presence. See *Bartlett*, 231 Mich App at 152 (holding that a defendant's general control, not supervisory control, over at least a portion of a dwelling and knowledge that drugs are kept or sold from the dwelling is sufficient to support the defendant's conviction of maintaining a drug house). There was testimony that the amount was too large for personal use and there was a scale found with the heroin. Although one witness for the defense testified that the bag belonged to a man only identified as Buck, the jury apparently did not find him credible, which is within its purview as the trier of fact, and is not a basis for challenging the sufficiency of the evidence. *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012). The totality of these circumstances allows a rational fact-finder to conclude that defendant had general control over his bedroom and knowingly maintained a drug house in the apartment.

MCL 333.7403(2)(a)(*v*) prohibits the possession of methadone, a schedule 2 controlled substance, MCL 333.7214(b). The elements of possession of less than 25 grams of methadone are: (1) the defendant knowingly or intentionally possessed a controlled substance, (2) the substance was methadone, and (3) the controlled substance weighed less than 25 grams. MCL 333.7403(2)(a)(*v*). The elements of possession of a controlled substance in jail are: (1) that the defendant was a prisoner who (2) possessed or controlled (3) a controlled substance. *People v Williams*, 294 Mich App 461, 470; 811 NW2d 88 (2011). Defendant asserts in both his principal brief on appeal and his pro se brief that there was insufficient evidence to support both offenses, arguing only that the prosecution failed to prove beyond a reasonable doubt that the pills contained methadone. We disagree. Brooks, who had 21 years of experience, identified the pills as methadone at trial. Although she did not perform a chemical analysis, she testified that she made the physical identification by viewing the markings on the pills and using an online database containing information on all pharmaceutical tablets, which indicated that tablets with those markings contained methadone. Brooks further testified that she identifies pills through the database "all the time." It was the trier of fact's role to determine the weight of the evidence and the credibility of Brooks. *Eisen*, 296 Mich App at 331. Her testimony was sufficient to establish that the pills recovered from defendant were a controlled substance for purposes of possession of methadone and possession of a controlled substance in a jail.

Next, defendant argues in his principal brief and his pro se brief that the search warrant was invalid on the basis that a sufficient nexus was lacking between defendant and the place searched, and that the affidavit contained misleading or false information, was based on hearsay, and was stale. This issue is preserved because defendant filed a motion to suppress the evidence in the trial court. *People v Unger*, 278 Mich App 210, 243; 749 NW2d 272 (2008). "A court's factual findings at a suppression hearing are reviewed for clear error, but the application of the underlying law—the Fourth Amendment of the United States Constitution and article 1, § 11 of the Michigan Constitution—is reviewed de novo." *People v Slaughter*, 489 Mich 302, 310; 803 NW2d 171 (2011). We give great deference to a magistrate's finding of probable cause to issue a search warrant. *People v Mullen*, 282 Mich App 14, 21; 762 NW2d 170 (2008). We read the search warrant and the affidavit in a common-sense and realistic manner, *People v Stumpf*, 196

Mich App 218, 220; 492 NW2d 795 (1992), and presume that the affidavit supporting the search warrant is valid, *People v Martin*, 271 Mich App 280, 311; 721 NW2d 815 (2006).

The United States and Michigan Constitutions both guarantee every person the right to be free from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. The Michigan Constitution is "construed to provide the same protection as that secured by the Fourth Amendment, absent 'compelling reason' to impose a different interpretation." *Slaughter*, 489 Mich at 311 (quotation marks and citations omitted).

We have reviewed the affidavit and conclude that there is a substantial basis for the magistrate's conclusion that there was a fair probability that contraband or evidence of a crime would be found in defendant's apartment. *People v Russo*, 439 Mich 584, 604; 487 NW2d 698 (1992).

First, the affidavit provided sufficient facts to establish that the apartment searched was the scene of a criminal enterprise. The affiant noted in the affidavit that the CI made two controlled purchases from defendant, including one in defendant's apartment. Reading the search warrant and the affidavit in a common-sense and realistic manner, *Stumpf*, 196 Mich App at 220, a reasonably cautious person could have concluded that there was a substantial basis that probable cause existed to find narcotics in defendant's apartment because one of the purchases occurred in defendant's apartment. See *People v Martin*, 271 Mich App 280, 298; 721 NW2d 815 (2006).

Next, we conclude that the warrant was not stale. We recognize that a search warrant must be supported by probable cause existing *at the time the warrant is issued*. *People v Osborn*, 122 Mich App 63, 66; 329 NW2d 533 (1982). The test for staleness is not whether there is recent information to confirm that a crime is being committed but whether probable cause is sufficiently fresh to presume that the sought items remain on the premises. *Id*. In determining whether the information is stale, this Court also considers factors such as the nature of the property sought, the place to be searched, and the character of the crime, i.e., whether the crime is a single instance, or an ongoing pattern of protracted violations, [and] whether the inherent nature of a scheme suggests that it is probably continuing. *Russo*, 439 Mich at 605-606.

Here, the second purchase by the CI occurred only one week before the warrant was issued. In addition, there were two controlled purchases, which is some evidence of an ongoing pattern of protracted violations. As further evidence, there was information in the affidavit that defendant was raising money to go down state to purchase a large quantity of narcotics, which is similarly indicative of an ongoing scheme of drug activity. Finally, the warrant in part authorized the search for records and documents related to the alleged sale of drugs as part of an ongoing drug business; under these circumstances, probable cause that those items would be in defendant's apartment was sufficiently fresh to presume that the sought items remained on the premises. *Id*. at 605.

Defendant next argues in both the brief filed by his attorney and his pro se brief that the warrant was invalid because the affiant had no personal knowledge of the facts and allegedly made material misrepresentations and false statements in the affidavit. First, we note that it was unnecessary for the affiant to have personal knowledge of the facts on which the warrant was sought because he informed the magistrate in the affidavit that he received information regarding

the two controlled purchases from a fellow officer. *People v Mackey*, 121 Mich App 748, 753-754; 329 NW2d 476 (1982). It was appropriate for the court to consider credible the information about the controlled purchases received by the affiant from a fellow officer and this information was properly used as a basis for the warrant affidavit. *Id*.

Moreover, some of the facts in the affidavit were supplied by the fellow officer based on an independent police investigation; they were not just based on information supplied by the CI. *People v Sellars*, 153 Mich App 22, 27; 394 NW2d 133 (1986). Specifically, the affiant confirmed that defendant was on parole, living at the address to be searched, and that defendant was trying to get his parole officer to take him off a GPS tether. A fellow officer also informed the affiant that defendant was trying to make a drug run down state. Together, it could be concluded that defendant wanted the tether removed so that he could purchase the drugs down state without a tether tracking his movements. Further, the warrant in part authorized the search for records and documents related to the alleged sale of drugs as part of an ongoing drug business. A reasonably cautious person could have concluded, under the totality of the circumstances, that there was a substantial basis for the magistrate's reliance on the information in the affidavit. *Mackey*, 121 Mich App at 753-754. We note that, contrary to defendant's argument in his pro se brief, it was irrelevant whether the police had probable cause to obtain the search warrant absent the CI's allegations. Instead, the proper inquiry is whether there was a substantial basis for the magistrate's conclusion that there was a fair probability that contraband or evidence of a crime would be found in a particular place. *Russo*, 439 Mich at 605.

Defendant also argues that the warrant was invalid because the affiant allegedly stated in the affidavit that he knew and had worked with the CI in the past, when he had not done so. Although the affiant's statement suggested that he was claiming that the CI was known to him, it is unclear from the affidavit whether the affiant was stating that he, his fellow officer, or both knew that the CI was reliable regarding information given in the past. Regardless, this argument has no merit. The information in the affidavit regarding the independent police investigation and controlled purchases was corroborating evidence that substantially verified the CI's information and provided support for a finding by the magistrate that the CI was reliable, or at the very least that the information was reliable. See *People v Ulman*, 244 Mich App 500, 509-510; 625 NW2d 429 (2001); *Sellars*, 153 Mich App at 27. See also *People v Poole*, 218 Mich App 702, 706; 555 NW2d 485 (1996) ("A search warrant affidavit must provide sufficient facts from which a magistrate could find that the information supplied was based on personal knowledge and that *either* the unnamed person was credible *or* the information was reliable.").

Defendant argues in his pro se brief that the affiant intentionally disregarded the truth when he stated that defendant was seen at the second controlled purchase wearing a snowmobile jacket, which was listed in the affidavit as an item to be seized, asserting that police officers were unable to identify defendant as the seller. The information provided in the affidavit was not false. The CI identified defendant as the person from whom he bought the purported drugs during the second controlled purchase. One police officer testified at trial that while he could not be certain the person he saw was defendant coming out of the apartment building after the purchase, he identified the coat the person was wearing and that the person had the same height, build, and weight as defendant. In addition, another police officer identified the second voice on the audio recording, from the second purchase, as belonging to defendant. Under these facts, defendant is unable to establish that the search warrant was procured with allegedly false

information because there is no evidence that affiant knowingly and intentionally, or with reckless disregard for the truth, inserted false material into the affidavit and that the false material was necessary to a finding of probable cause. *Franks v Delaware*, 438 US 154, 155-156, 171-172; 98 S Ct 2674; 57 L Ed 2d 667 (1978).

Affirmed.

/s/ Jane E. Markey
/s/ William B. Murphy
/s/ Amy Ronayne Krause